# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 11 |
| | : |
| MORAVIAN ASSOCIATES, L.P. AND | : JOINTLY ADMINISTERED |
| 121 WALNUT STREET APARTMENT ASSOCIATES, L.P., | : |
| | : BANKRUPTCY NO. 09-14938 SR |
| DEBTORS. | : BANKRUPTCY NO. 09-14943 SR |
| | : |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

## Introduction

Before the Court is the Objection (the "Objection") of the debtor, 121 Walnut Street Apartment Associates, L.P. ("Debtor"), to Claim Nos. 6 and 47 of Citizens Bank of Pennsylvania ("Citizens").[1] The claims are for the same debt.[2] Debtor contends that the amount of Citizens' claim should be reduced, pursuant to the Third Circuit's decision in *Stendardo v. Federal National Mortgage Association (In re Stendardo), 991 F.2d 1089*

---

[1] The Debtor's bankruptcy case is being jointly administered with the bankruptcy case of Moravian Associates, L.P. ("Moravian") which is Case No. 09-14938.

[2] Claim No. 6 was filed in the Debtor's bankruptcy case (No. 09-14943) and lists 121 Walnut Street Apartments, LLP as the debtor. Claim No. 47 lists Moravian as the debtor and was filed in Moravian's bankruptcy case (No. 09-14938). Both claims are for the same debt. Debtor seeks to have Claim No. 6 expunged as being duplicative of Claim No. 47. Citizens acknowledges that the it has only one claim and that it is against the Debtor, 121 Walnut Street Apartment Associates, LLP, but states that it filed two claims as a precaution in case the Debtor's bankruptcy case was substantively consolidated with Moravian's bankruptcy case. *See Memorandum of Law in Support of Claim Filed by Citizens Bank of Pennsylvania ("Citizens' Brief") at 11.* While the bankruptcy cases are being jointly administered, they have not been substantively consolidated. *See Docket Entry No. 34 in Bankruptcy Case No. 09-14943.* The Court shall, therefore, disallow Claim No. 47 since the debt at issue is between Citizens and the 121 Walnut Street Debtor rather than between Citizens and Moravian.

*(3d Cir. 1993)*, because Citizens entered a judgment by confession (the "Judgment") against the Debtor in July of 2009. As a result of the Judgment, Debtor contends that Citizens is precluded from recovering: (i) post-judgment late charges (amounting to $86,242.65); (ii) post-judgment attorney's fees (estimated to be $75,000); and (iii) post-judgment interest at a floating contractual default rate (the "Default Rate").[3]

A hearing was held on the Objection. The parties agreed to have the matter decided on the "pleadings and copies of the relevant loan documents." Transcript, dated March 18, 2010, at 2-3.

Upon consideration of the matter, the Motion shall be granted in part and denied in part. While Citizens is not entitled to recover post-judgment late fees or post-judgment interest at the Default Rate, it is entitled to recover reasonable post-judgment attorneys' fees as part of its allowed secured claim.

## Background

On May 22, 2003, Debtor and Citizens entered into the following agreements (collectively referred to as the "Loan Documents"): (i) Construction Loan Agreement in the principal amount of $1,900,000.00 ("Loan Agreement"); (ii) Construction Line of Credit/Permanent Mortgage Note ("Note"); and (iii) Open-End Mortgage and Security

---

[3] Debtor concedes that: (1) "Citizens' claim is secured by a lien on the Judgment, which relates back to the date of recordation of Citizens' first mortgage and that there is sufficient equity in the property to secure the full amount of Citizens' claim as allowed by this Court[;]" and (2) "Citizens' allowed claim is the amount of the Judgment, plus interest at the legal rate (6% simple interest) on the amount of the Judgment outstanding from time to time from July 2, 2009 through the date of payment." *See Memorandum of Law in Support of Debtor's Objection to Claim No. 6 and Claim No. 47 of Citizens Bank ("Debtor's Brief")* at 1.

2

Agreement (the "Open-End Mortgage"). *See* Citizens Exhibit 1, Citizens Exhibit 2 and Citizens Exhibit 3. In addition, based upon the occurrence of certain events of default ("Defaults") under the Loan Documents and the parties' negotiations thereafter, the parties entered into a Forbearance Agreement, dated May 20, 2009 ("Forbearance Agreement"), pursuant to which Citizens agreed to forbear from exercising and enforcing its rights based upon the Defaults under the Loan Documents until the earlier of: (a) the occurrence of any default or event of default (other than the Defaults) under the Loan Documents; (b) a breach of the terms of the Forbearance Agreement; or (c) September 15, 2009. *See* Citizens Exhibit 4.

Based upon the confession of judgment provision contained in the Note, Citizens obtained the Judgment against the Debtor on July 2, 2009, in the amount of $1,699,100.86. *See Docket from Court of Common Pleas of Philadelphia, Docket No. 09-0700044, which is included as part of Exhibit A to Debtor's Brief.*[4]

## Discussion

### I. The Third Circuit's Decision in *Stendardo*

In *Stendardo, supra,* the Federal National Mortgage Association ("FNMA",) which was the mortgagee, filed a mortgage foreclosure action and obtained a default judgment against the mortgagors. Thereafter, FNMA paid insurance premiums and real

---

[4] The Entry of Judgment and Assessment of Damages filed by Citizens provides that "damages are assessed in the amount of $1,699,100.86, including interest and attorney's fees from and after July 2, 2009[.]" While Citizens makes reference to this language in its brief, *see Citizen's Brief at 3,* Citizens failed to provide any authority for the proposition that this language itself entitles it to recover post-judgment interest at the Default Rate or post-judgment attorney's fees as part of its proof of claim. *See Citizens' Brief.*

3

estate taxes (the "Post-Judgment Expenses") on the mortgaged property. When the mortgagors filed for bankruptcy, FNMA filed a proof of claim in their bankruptcy case for the aggregate amount of: (i) the default judgment which FNMA had obtained; (ii) Post-Judgment Expenses; and (iii) attorney's fees and costs. The debtors/mortgagors filed an objection to FNMA's claim asserting, in relevant part, that FNMA was not entitled to recover Post-Judgment Expenses. On appeal to the Third Circuit, FNMA argued that the clause in the mortgage contract which obligated the mortgagors to pay real estate taxes and insurance premiums entitled FNMA to recover Post-Judgment Expenses as part of its proof of claim. The Third Circuit disagreed, opining that upon the entry of the default judgment against the debtor on the mortgage, the terms of the mortgage ceased to exist pursuant to the doctrine of merger of judgments. This doctrine "provides that the terms of a mortgage are merged into a foreclosure judgment and thereafter no longer provide the basis for determining the obligations of the parties." *991 F.2d at 1095.* Citing an example of how the doctrine has been applied, the Third Circuit stated:

> For example, bankruptcy courts have consistently held that the doctrine of merger under Pennsylvania law entitles a mortgagee post-judgment to the legal rate of interest rather than the rate specified in the mortgage. Because the mortgage merges into the judgment, its terms specifying the contractual interest rate no longer exist to bind the parties.

*Id.* Because the terms of the mortgage no longer existed, FNMA could not rely upon those terms to recover Post-Judgment Expenses as part of its claim against the estate.

Importantly, the Third Circuit recognized that there is an exception to the

4

doctrine of merger of judgments. Pursuant to this exception, "[p]arties to a mortgage may rely upon a particular provision post-judgment if the mortgage clearly evidences their intent to preserve the effectiveness of that provision post-judgment." *Id.* The Third Circuit concluded that the exception was inapplicable to the matter before it because the terms of the mortgage did not indicate any intent by the parties to obligate the Debtors to pay Post-Judgment Expenses.

In the midst of its discussion regarding FNMA's argument, the Third Circuit also discussed a case, namely *In re Clark Grind & Polish, Inc., 137 B.R. 172 (Bankr. W.D. Pa. 1992)*, which FNMA cited in support of its position. The Third Circuit's discussion of *Clark* is relevant to the instant matter.

Summarizing the facts and the bankruptcy court's ruling in *Clark*, the Third Circuit stated:

> [T]he debtor had purchased substantially all of the assets of the creditor. In consideration for the purchase, the debtor executed a judgment note, a mortgage on the real estate transferred to the debtor, and an asset purchase agreement. Id. at 173. After the debtor filed bankruptcy, the creditor filed an application for allowance of attorney's fees and costs as part of its secured claim against the debtor under 11 U.S.C.A. § 506(b). Id. The debtor argued that the creditor's right to additional attorney's fees and costs merged with the judgment it had obtained under a confession of judgment clause in the note. Id. at 175.
>
> There the bankruptcy court concluded that any right the creditor had to attorney's fees and costs under the note was extinguished once it entered judgment. Id. (*citing* In re Schwartz, 77 B.R. 177, 180 (S.D. Ohio 1987), *aff'd*, 87 B.R. 41 (S.D. Ohio 1988)). The court went on to hold, however, that the rights created by the continuing lien of the secured creditor's mortgage and the asset purchase agreement

5

securing the debtor's obligation were not extinguished until the creditor received payment. Id. (*citing* Schwartz, 77 B.R. at 180-81). The bankruptcy court held that the lien remained independent of the judgment on the note. Id.; see Restatement (Second) of Judgments § 18 cmt. g (1982) (if creditor has lien upon property of debtor and obtains judgment against debtor, creditor does not thereby lose benefit of lien). There, specific language in the mortgage, also incorporated into the note and the asset purchase agreement, provided for survival of the creditor's recovery of attorney's fees and costs:

> In case [of] default ... foreclosure proceedings may be brought ... on this Mortgage and prosecuted to judgment, execution and sale for the collection of the same, together with costs of suit and an attorney's commission for collection of the total indebtedness.

Id. at 174. Accordingly, the court decided in Clark that this language demonstrated the parties' intent that the creditor was entitled to compensation for attorneys' fees and costs in executing its judgment:

> Between the time of judgment and the time the secured creditor receives payment, the secured creditor may be required to make additional expenditures to protect its security interest and its collateral. The amount of fees asserted in the judgment is not binding where there is an intent to allow the secured creditor to recoup its costs in fully realizing upon its claim. Such costs include defending the claim in bankruptcy proceedings.
>
> The Mortgage and Asset Purchase Agreement contemplate that liability for fees and costs would continue until the debt was paid. [The secured creditor] may include these charges as part of its secured claim subject to this Court's determination of the reasonableness of such charges.

6

>Id. at 175 (citations omitted).

991 F.2d at 1096. Afer summarizing the facts and ruling in *Clark*, the Third Circuit observed that the language in the mortgage in *Clark* was "almost identical" to the language at issue in the mortgage before it. <u>Nevertheless</u>, the Third Circuit still concluded that <u>Clark</u> was distinguishable from its case. In so concluding, the Third Circuit relied upon key differences which it identified between its case and *Clark*. The Third Circuit emphasized that, in *Clark*, the creditor obtained a confessed judgment on the promissory note whereas the judgment in *Stendardo* was based on the mortgage and that, notwithstanding the judgment on the note in *Clark*, the mortgage and asset purchase agreement between the parties in *Clark* <u>independently</u> provided for the recoupment of attorneys' fees and costs. In contrast, the Third Circuit observed that the note in *Stendardo* did not independently "provide for the Debtors' obligation to pay for the Post-Judgment Expenses." 991 F.2d at 1097. Rather, the note incorporated provisions from the mortgage into it. Since the mortgage no longer existed after the mortgagee obtained a judgment on it, there were no terms remaining in the mortgage for incorporation into the note. Based on these distinctions, the Third Circuit found that the ruling and rationale in *Clark* was inapplicable to the matter before it.

The Third Circuit's decision in *Stendardo* and its explanation of *Clark* provide the framework for this Court's decision herein. The Court shall review the language in the parties' Loan Documents in light of this framework.

7

## II. The Loan Documents

### A. Late Charges

According to Citizens, it assessed the late charge which it seeks to recover as part of its claim against the Debtor's estate because the Forbearance Agreement obligated Debtor to pay its outstanding indebtedness to Citizens on or before September 15, 2009. *See Citizens' Brief at 3.* When Debtor failed to make this payment, Citizens assessed the late charge pursuant to the terms of the Note. *Id.* However, Citizens obtained its Judgment against the Debtor on the Note on July 1, 2009. Consequently, it assessed the aforementioned late charge after the entry of its Judgment.

The teaching of *Stendardo* is that the terms of the instrument upon which a judgment has been entered cease to exist once judgment on the instrument has been entered. Consequently, unless the language of the relevant instrument providing for late charges (here, the Note) evidences an "intent to preserve the effectiveness" of the provision post-judgment, Citizens is not entitled to recover post-judgment late charges as part of its proof of claim.

The provision at issue in the Note states:

> Maker agrees that in the event any payment .... shall be overdue for a period in excess of five (5) days, Maker shall pay, in addition to the payment past due, a late charge of five cents ($0.05) for each dollar ($1.00) so past due, but in no event less than twenty-five dollars. If after an event of default Bank elects to accelerate the maturity of Loan and declare the Loan due and owing immediately, Bank may, as an element of damages, continue to assess late charges against the maker ... A late charge shall apply to each and

8

every subsequent month that any payment is not made and
shall compound.

*See Citizens Exhibit 2 at pg. 2.* While this provision entitled Citizens to assess late charges against the Debtor after Citizens elected to accelerate the maturity of the Loan, the provision does not, as a matter of law, evidence an intent by the parties to entitle Citizens Bank to assess late charges after it obtained the Judgment. The ruling in in *In re Nixon, 400 B.R. 27 (Bankr. E.D. Pa. 2008),* is consistent with this conclusion.

In *Nixon,* the bankruptcy court rejected a creditor's assertion that it was entitled to post-judgment late charges based upon language in a note which, like the Note in the instant case, entitled to lender to assess a late fee following the lender's demand of full payment of the loan. The note in *Nixon* provided:

> **LATE CHARGE**. If a regularly scheduled interest payment is 16 days or more late, Borrower will be charged **5.00% of the regularly scheduled payment or $20.00**, whichever is greater. If Lender demands payment of this loan, and Borrower does not pay the loan in full **within 16 days after Lender's demand, Borrower will also be charged either 5.00% of the sum of the unpaid principal plus accrued unpaid interest or $20.00, whichever is greater.**

400 B.R. at 36 (bolding in original). The bankruptcy court in *Nixon* rejected the creditor's argument, reasoning that:

> [t]o the extent that failure to pay a judgment can be construed as a demand for payment to which late charges attach, **there is no language in the Note that indicates that this provision was intended to survive judgment** . . . . Therefore, under the merger doctrine, this provision cannot provide the basis for a post-judgment Late Charge. Stendardo, 991 F.2d at 1094. As [the creditor] cites no other provision in the other Loan Documents to support the

9

> continued imposition of late charges post-judgment, the
> Objection will be sustained and late charges will be
> disallowed.

*Id. at 37 (bolding added).*

As in *Nixon,* there is no language in the provision quoted above (from the Note) indicating that Citizens was entitled to assess late charges against the Debtor after the entry of its Judgment on the Note. Therefore, its proof of claim shall be reduced by $86,242.65 which is the amount included therein for late fees.

### B. Default Rate of Interest and Attorneys' Fees

In support of its contention that it is entitled to collect post-judgment attorneys' fees and post-judgment interest at the Default Rate, Citizens relies upon the following portions of the Note, Mortgage and Loan Agreement: (i) page 2 of the Note; (ii) Section 7.3 of the Mortgage; and (iii) the Indemnification clause contained in the Loan Agreement. Citizens' Brief at 3-4. The Court shall address each of these bases separately.

### (i) The Note

The provision on page 2 of the Note states, in pertinent part:

> If Maker shall fail to pay any sum within fifteen (15) days of
> the date when due hereunder, or if Maker shall in any other
> way be in default hereunder or upon the occurrence of an
> Event of Default (as defined in the Loan Agreement), ....
> then the entire unpaid principal balance on this Note
> together with interest accrued thereon and with all other
> sums due or owed by Maker hereunder (including any
> unpaid fees) and under the terms of the Loan Documents
> shall at the option of the Payee and without notice to Maker
> become due and payable **immediately with interest at
> the rate set forth herein, together with reasonable**

> **attorney's fees for collection and payment of the
> same may be enforced and recovered by the entry of
> judgment on this Note and the issuance of execution
> thereon**.

Citizens' Exhibit 2 at pg. 2 (emphasis added).  While the language in this paragraph entitled Citizens, upon default, to assess interest at the Default Rate and to recover "reasonable attorney's fees for collection," the language in the paragraph clearly indicates that the Debtor's payment of such interest and attorney's fees was to be "enforced and recovered" by Citizens through the entry of a judgment on the Note.  The language does not evidence any intent by the parties to provide Citizens with the contractual right to assess and recover interest at the Default Rate or attorney's fees <u>after</u> the entry of its Judgment on the Note.  Consequently, based on the doctrine of merger of judgments, the Note does not support Citizens' position vis-a-vis its recovery of post-judgment interest at a default rate.

### (ii) Section 7.3 of the Mortgage

Section 7.3 of the Mortgage provides, in pertinent part:

> Upon the occurrence of an Event of Default, the entire
> unpaid balance of the principal of the principal, accrued
> interest and all other sums secured by this Mortgage, shall,
> at the option of the Mortgagee, become immediately due
> and payable without notice or demand and **Mortgagee
> shall have and may exercise all the rights and
> remedies permitted by law, including without
> limitation, the right to foreclose this Mortgage, and
> proceed thereon to final judgment and execution
> thereon for the entire unpaid balance of said
> Obligations, with interest, at the Default Rate and
> pursuant to the methods of calculation specified in
> the Note**, together with all other sums secured by this
> Mortgage, all reasonable costs of suit, **interest at the**

11

> **Default Rate on any judgment obtained by Mortgagee from and after the date of any Sheriff's Sale of the Mortgaged Property until actual payment is made by the Sheriff of the full amount due Mortgagee, and reasonable attorney's fees,** without further stay, any law, usage, or custom to the contrary notwithstanding.

Citizens Exhibit 3 at Section 7.3 on pg. 17. This section contains two passages (both in bold above) which provide for the recovery of interest at the Default Rate beyond the entry of a judgment on the Mortgage. The first passage provides for the accrual of interest at the Default Rate until "final judgment and execution thereon" while the second passage refers to the accrual of interest at the Default Rate "on any judgment obtained by Mortgagee from and after the date of any Sheriff's Sale of the Mortgaged Property until actual payment is made by the Sheriff[.]" *Id.* Arguably, this language in Section 7.3 constitutes the type of language which falls outside of the general rule regarding the merger of judgments and within the exception to that doctrine (*i.e.,* language evidencing an intent to preserve the effectiveness of a provision post-judgment). However, there is still a problem, albeit a different one, which prevents Citizens from relying on Section 7.3 to recover post-judgment interest at the Default Rate.

Section 7.3 contains no definition for the term "Default Rate." Indeed, the term is not defined anywhere in the Mortgage. The first time the term is used in the Mortgage is in Article I, Section 1.1, which is labeled "Covenants As To Taxes and Assessments." This section states, in relevant part:

> In default of any of the above-described payments [which

12

> consist of taxes, water and sewer rents, etc.], Mortgagee
> may, but shall not be obligated to, pay the same and such
> payment by the Mortgagee shall be repaid by Mortgagor on
> demand, shall be secured hereby, and shall bear interest <u>at
> the Default Rate as defined in the Note (herein, the
> **"Default Rate"**)</u> from the date Mortgagee makes such
> payment until such sums are paid in full.

Citizens Exhibit 3, at pg. 4, Article I, Section 1.1 (underlining added; bolding in original). Pursuant to this section, the Mortgage does not independently define "Default Rate" but relies, instead, on the definition of the term in the Note. Similarly, Section 7.3 provides for Citizens to recover interest at the Default Rate "pursuant to the methods of calculation specified in the Note[.]" Again, the Mortgage does not independently explain the method for calculating interest at the Default Rate but, instead, relies upon the Note for that information.

Since the Note merged into the Judgment, the terms of the Note no longer exist. *See Stendardo, supra, 991 F.2d at 1095* ("Because the Mortgage merges into the judgment, its terms specifying the contractual rate of interest no longer exist to bind the parties."). Therefore, there is no definition of the term "Default Rate," or any provision in the Note explaining how such interest is to be calculated, that remains for incorporation into the Mortgage. *See id. at 1097* (explaining that, because the terms of the mortgage had ceased to exist when the mortgagee obtained a judgment thereon, the mortgage's terms no longer existed to be incorporated into the parties' note). Consequently, consistent with the Third Circuit's teaching and ruling in *Stendardo,* the Mortgage does not provide Citizens with the right to recover post-

judgment interest at the Default Rate.[5]

Section 7.3 of the Mortgage further provides that Citizens is entitled to "reasonable attorney's fees." Unlike the problem (noted above) with the term "Default Rate," the Mortgage make no reference back to the Note in defining the terms "reasonable attorney's fees" or explaining how such fees are to be calculated.

Nevertheless, the language of the Mortgage entitling Citizens to recover "reasonable attorney's fees" does not state that such fees are recoverable until the debt to Citizens is paid. This is in stark contrast to the manner in which Section 7.3 refers to the recovery of interest at the Default Rate. With regard to the recovery of interest at the Default Rate, the Mortgage specifically provides Citizens with the right to recover "interest at the Default Rate on any judgment obtained by Mortgagee from and after the date of any Sheriff's Sale of the Mortgaged Property until actual payment is made by the Sheriff of the full amount due Mortgagee[.]" Section 7.3 of the Mortgage. Following this very detailed language (which provided Citizens with the right to recover interest at the default rate on any judgment obtained by the Mortgage *until actual payment*), the Mortgage simply provides that Citizens is entitled to "reasonable attorney's fees." There is no mention of any right to recover attorney's fees post-judgment or "until actual payment is made by the Sheriff of the full amount due Mortgagee[.]" Given the significant and striking difference in the language in Section

---

[5] In *Clark*, the creditor confessed judgment on the note. Consequently, its right to attorney's fees and costs under the note was extinguished. However, the mortgage independently, and without incorporating terms from the note, entitled the creditor to recover an "attorney's commission for collection of the total indebtedness." 137 B.R. at 174-75.

14

7.3 between the way it addresses Citizens' right to post-judgment interest at the Default Rate and Citizens' right to "reasonable attorney's fees," the Court concludes that Citizens is not entitled under the terms of the Mortgage to recover post-judgment attorney's fees.

### (iii) The Indemnification Clause in the Loan Agreement

However, while the Note merged into Citizen's Judgment, the Loan Agreement did not. *See In re Nixon, 400 B.R. at 37 (observing that neither the Mortgage nor the Business Loan Agreement merged into Judgment that was confessed on the Note).* The Indemnification clause in the Loan Agreement states, in relevant part:

> Borrower [which means the Debtor] shall indemnify and hold harmless Lender [which means Citizens] from and against all losses, damages, costs, and expenses, including, without limitation, attorney's fees incurred by the Lender by reason of the failure of Borrower ... to comply with any term or condition of any of the Loan Documents to which they are parties (including, without limitation, the failure to pay when due any principal, interest, or other amount due under the Loan Documents).

Citizens Exhibit 1 at Article IX, Section 9.5, pg. 38. Because this provision does not reference or incorporate any terms from the Note, it independently provides Citizens with the right to recover attorney's fees incurred "by reason of" the Debtor's failure to pay the amount due under the Note. The attorney's fees which Citizens has incurred post-judgment in seeking to recover payment from the Debtor fit squarely within this provision.

Where the parties' contract so provides, Section 506(b) of the Code allows an oversecured creditor to include *reasonable* attorney's fees as part of its allowed secured

15

claim. See F.B.F., Inc. V. Meridian Bank (In re F.B.F. Industries, Inc.), 1995 WL 581935, at *1 (E.D. Pa. Oct. 3, 1995). Debtor does not directly object in its brief to the amount of Citizen's post-judgment attorney's fees. However, Citizens' brief contains the following comments on the issue:

> With respect to the reasonableness of the attorney's fees, counsel for the Debtor has agreed that, if the Court find that Citizens is entitled to collect post-judgment attorney's fees, the debtor will not contest the reasonableness of attorney's fees incurred by Citizens prior to February 9, 2010 and a <u>subsequent hearing will be held to determine the reasonableness of Citizens' attorneys' fee after February 9, 2010.</u>

Citizens' Brief at n. 2 (underlining added). In Debtor's Reply Memorandum, Debtor concedes the point made by Citizens (i.e., that Debtor has agreed not to contest the reasonableness of the post-judgment attorney's fees which Citizens incurred prior to February 9, 2010 and that a subsequent hearing will be held on the reasonableness of the attorneys' fees which Citizens incurred after February 9, 2010, when it filed its Objection to Citizen's proofs of claim). Since both parties agree to a subsequent hearing limited to the issue of the reasonableness of Citizens' attorneys' fees since February 9, 2010, the Court shall not resolve the issue at this time. The Court encourages the parties to discuss this issue. If agreement cannot be reached as to an amount which is reasonable for the fees, then the Debtor may request a hearing on that limited issue.

### Summary

For the reasons set forth above, Debtor's Objection to Citizens' claim is granted

16

in part and denied in part. Claim No. 47 shall be disallowed. Claim No. 6 is an allowed secured claim but such claim shall be limited to the amount of the Judgment, namely $1,699,100.86 plus interest thereon at the legal rate of six percent (6%) per annum and reasonable post-judgment attorney's fees which shall be determined following a hearing on that issue, if necessary.

By the Court:

Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: <u>May 26, 2010</u>